## THE SHARPS' RIFLE MANUFACTURING COMPANY *vs.* HENRY S. ROWAN.

The British Government held, in the name of the respondent, the legal title to certain real estate in this state, originally taken of *R. & L.* as security for advances to them under a contract for the manufacture of rifles and for the performance of the contract. The petitioners had previously held the legal title, under a contract with *R. & L.*, by which they were to hold it as security for certain purposes, with a right to purchase at an appraisal, and had released it to *R. & L.* to enable them to make the mortgage held by the British Government. This release was made upon a condition that when *R. & L.* had performed their contract secured by the mortgage then to be given, the legal title should be re-conveyed to the petitioners. This court having previously held that the property thus released by the petitioners stood in the position of a surety for the performance of the contract of *R. & L.*, and that the property was discharged from its liability in this relation by reason of changes made by the British Government in the contract secured by it, the petitioners now brought a bill in equity to compel the respondent to re-convey the legal title to them. It appeared that all the claim for which the petitioners originally held the property as security had been satisfied, and that they had no claim to such a re-conveyance except upon the ground of their right to purchase the property at an appraisal. Held that, as they had not averred any intention at present to exercise the right of purchase, but claimed only that they were entitled to a re-conveyance that they might under the contract exercise the right at their option at some future time, the relief sought ought not to be granted.

Held also that it was no reason for giving the legal title to the petitioners, that they had an independent claim against the British Government on which the latter could not be sued in our courts, and in respect to which they would have an advantage if they held the legal title and the British Government was compelled to come into a court of equity as a petitioner to get it from them.

The British Government having the legal title had an advantage in a conflict of

equities, and a court of equity would not take away this advantage merely to give it to the other party.

BILL IN EQUITY, brought to the Superior Court in Hartford County, to compel the conveyance of certain real estate standing in the name of the respondent, but in fact held by him as the agent of the British Government. This court having sustained a demurrer of the petitioners to a plea to the jurisdiction of the court filed by the respondent, (34 Conn. R., 329,) the case was referred to a committee, by whom the facts were found, and on the facts so found was reserved by the Superior Court for the advice of this court. The facts are essentially the same as in a former suit of the present respondent against the present petitioners, the allegations of the petition in either case being substantially those of the cross-bill in the other. See 31 Conn. R., 1., and 33 Conn. R., 1. See also a different case between the same parties, but involving many of the same facts, 29 Conn. R., 282.

*Dutton* and *Hubbard,* for the petitioners.

*T. C. Perkins* and *Chamberlin,* with whom were *H. Whittaker* of New York, and *Hooker,* for the respondent.

HINMAN, C. J. The points involved in this case were before this court on a former occasion, in a case between the same parties, instituted by the present respondent in order to foreclose the then respondents of all equitable right that they might have in the premises in question, in which a cross-bill was filed by the present petitioners setting up all the facts brought before us at this time. See 33 Conn., 1. It is true that one among other reasons for dismissing that cross-bill was, that it set up an independent claim of the then respondents against the British Government, represented by the petitioner, in respect to the premises in question, which upon general principles could not be set up by a cross-bill to that application. But we also went further, and held that there was no principle of equity which would enable the present petitioners,

by way of cross-bill, or otherwise, to seize the property of their debtor and appropriate it to the payment of their independent debt, either because the debtor was privileged from being sued, or for any other cause applicable to the facts then and now before us. In the present case the parties are reversed, but the object of this petition is the same as that of the former cross-bill. The aid of a court of equity is not sought for the purpose of enabling the petitioners to exercise or enforce their optional right of purchase of the premises. For, while they claim that right, and ground their right to relief upon it, they do not propose to exercise it, either presently or at any certain future time. Nor do they make any claim now in respect to the small balance still due them upon their prior mortgage. That balance has been tendered to them, and the money is now in the hands of their treasurer subject to their order, to be at any time appropriated to the payment of that balance if they will accept it, so that they have now no claim on that account. But their only claim is, that they are entitled as matter of right to the legal title for the purpose, as is very frankly stated in argument, of compelling the British Government, represented by the respondent in respect to this property, to do justice to the petitioners in respect to their independent claim against that government, which was sought to be enforced in their cross-bill to the former petition. This, as we understand it, is simply to take from the respondent the advantage which the law gives him by reason of his having the legal title, and to transfer that same advantage to the petitioners, without any more substantial reason for it than an intimation that they may, at some future time, be disposed to exercise their optional right of purchase. And this claim is made with much zeal and pertinacity, while they all along admit that they have no present intention of exercising their right of purchase, and do not even claim that they have any remote intention ever to exercise it; and it is moreover apparent from their avowed object of using their legal title when obtained for the purpose of enforcing payment of their independent claim against the British Government, that this use

of it would prevent their ever exercising their right of purchase, if they still have it.

Under these circumstances we have not deemed it of any importance to enquire whether that right of purchase still exists. It is enough, we think, that they in substance disclaim any intention of exercising it in any event, to prevent its being used as any reason for decreeing the title to them, or any ground upon which it can be done.

Upon the former occasion, and, as we have said, upon substantially the same facts, we held that the respondent's legal title was in equity first subject to the petitioners' mortgage, on which there was then due about the sum of two hundred dollars, and that, if this debt was paid, the respondent would be the only party having any incumbrance upon the property except such as arose from the petitioners' optional right of purchase, and this right of purchase, not being intended to be exercised, was not the subject of consideration, so that the present respondent, upon the view which we then took of the case, was entitled to a foreclosure for the full amount of his claim, less the amount of the present petitioners' claim for damages against the British Government growing out of the contract of March 26, 1856, but including in the respondent's claim the amount he might pay the petitioners in respect to their prior mortgage. It is true that, for reasons stated in the opinion given in that case, and which were then not very satisfactory to the court, we did not advise that such a decree as seemed to be the legitimate result of the facts then and now before us, should be entered up in the Superior Court. But there should be some end to this unprofitable litigation; and as the facts now before us are substantially the same as on the former occasion, except that the small balance due the petitioners has since been satisfied by the tender and the leaving of the money in the hands of the petitioners' treasurer, we do now advise the Superior Court that the petitioners take nothing by their bill, and that the prayer thereof be denied and the bill be dismissed. And upon the respondent's cross-bill seeking to foreclose the petitioners of all right to redeem unless they pay to the respondent the full

amount of his claim as found by the committee, less the amount of the petitioners' claim against the British Government for damages growing out of the contract of March 26, 1856, if the petitioners elect to have said damages so applied, and unless also the petitioners pay to the respondent his costs in this suit, we advise that the relief sought for in the cross-bill be granted, and the petitioners be foreclosed of all right, title, and interest in or to the premises unless they pay said claims and the costs of the respondent within such time as the court shall limit for that purpose.

In this opinion CARPENTER and LOOMIS,* Js., concurred. PARK, J., dissented.

---

* Judge Loomis of the Superior Court sat in this and the next following case, having been called in by the Chief Justice, at the request of the counsel, to take the place of Judge Butler, who was not able to attend during the term; the act of 1867 authorizing the Chief Justice to call in any judge of the Superior Court in such a case.